## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

CASE NO.

HUNT CONSTRUCTION GROUP, INC., an
Indiana corporation,

     Plaintiff,

vs.

LEXINGTON INSURANCE COMPANY, a Delaware
corporation, XL INSURANCE AMERICA, INC., a
Delaware corporation, PRINCETON EXCESS
AND SURPLUS LINES INSURANCE COMPANY,
a Delaware corporation, ARCH SPECIALTY INSURANCE
GROUP, a Wisconsin corporation, and AXIS
SURPLUS INSURANCE COMPANY, a Georgia corporation.

     Defendants.

_____/

## COMPLAINT

Plaintiff, HUNT CONSTRUCTION GROUP, INC., an Indiana corporation ("Plaintiff" or "HUNT"), by and through its undersigned counsel, hereby sues LEXINGTON INSURANCE COMPANY, a Delaware corporation, XL INSURANCE AMERICA, INC., a Delaware corporation, PRINCETON EXCESS AND SURPLUS LINES INSURANCE COMPANY, a Delaware corporation, ARCH SPECIALITY INSURANCE GROUP, a Wisconsin corporation, and AXIS SURPLUS INSURANCE COMPANY, a Georgia corporation (collectively "Defendants"), by and through its Complaint and states as follows:

## PARTIES

1.    Plaintiff, HUNT CONSTRUCTION GROUP, INC., is a corporation organized and existing under the laws of the State of Indiana with its principal place of business in Indiana and is a citizen of the State of Indiana, for the purposes of diversity

jurisdiction.

2.     Upon information and belief, Defendant, LEXINGTON INSURANCE COMPANY ("LEXINGTON"), is a Delaware corporation with its principal place of business in Boston, Massachusetts. LEXINGTON can be served with the Summons and Complaint by service upon Counsel, Legal Department, Lexington Insurance Company, 100 Summer Street, Boston, Massachusetts, 02109 and is a citizen of the Commonwealth of Massachusetts and the State of Delaware for purposes of establishing diversity jurisdiction.

3.     Upon information and belief, Defendant, XL INSURANCE AMERICA INC. ("XL"), is a Delaware corporation with its principal place of business located in either Wilmington, Delaware or New York, New York. XL can be served with the Summons and Complaint by service upon the corporation at 70 Seaview Ave., Stamford, CT 06902 and is a citizen of the State of Delaware or the State of New York for purposes of establishing diversity jurisdiction.

4.     Upon information and belief, Defendant, PRINCETON EXCESS AND SURPLUS LINES INSURANCE COMPANY ("PRINCETON"), is a Delaware corporation with its principal place of business in Princeton, New Jersey. PRINCETON can be served with the Summons and Complaint by service upon the corporation at 555 College Road East, Princeton, NJ 08543 and is a citizen of the State of New Jersey or State of Delaware for purposes of establishing diversity jurisdiction.

5.     Upon information and belief, Defendant, ARCH SPECIALTY INSURANCE GROUP ("ARCH") is a Wisconsin Corporation with its principal place of business in either Stamford, Connecticut or New York, New York. ARCH can be served with the Summons and Complaint by service upon the corporation at One Liberty Plaza, 53rd Floor, New York, NY 10006 and is a citizen of the State of New York, State of Wisconsin or

State of Connecticut for the purposes of establishing diversity jurisdiction.

6.     Upon information and belief, Defendant, AXIS SURPLUS INSURANCE COMPANY ("AXIS"), is a Georgia corporation with its principal place of business in Chicago, Illinois. AXIS can be served with the Summons and Complaint by service upon the corporation at 11680 Great Oaks Way, Suite 500, Alpharetta, GA 30002 and is a citizen of the State of Georgia and State of Illinois for the purposes of establishing diversity jurisdiction.

7.     The Defendants listed above in paragraphs 2 through 6 are referred to collectively in this Complaint as "the Underwriters."

## JURISDICTION AND VENUE

8.     This is an action, in part, for declaratory judgment pursuant to 28 U.S.C. § 2201 for the purpose of determining a question in actual controversy between the parties.

9.     This Court has diversity jurisdiction over this action pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000, exclusive of attorneys' fees, costs and interest.

10.    Venue is proper in the Southern District of Florida pursuant to 28 U.S.C. § 1391 in that a substantial portion of the events giving rise to the claims at issue in this Complaint took place in this district.

## GENERAL ALLEGATIONS

*The W Hotel Project and the Property Damage*

11.    HUNT served as Construction Manager for construction of a two (2) tower high rise hotel and condominium project in Fort Lauderdale, Florida, now known as the W Hotel & Residences ("the W"). HUNT performed this work pursuant to a contract with the project's developer, Capri Resorts, LLC ("Capri"). Construction commenced on or about June 2005 and the project was completed on or about April 2009.

12.    Each unit within the W is cooled by an individual fan coil unit ("FCU"). The

FCUs are connected to a vertical copper piping system that provides chilled water necessary for the systems to function. The FCUs are contained within individual closets constructed of drywall and containing a vent allowing for air exchange between the FCUs and living space.

13.    During the course of construction, excessive, unexpected, and unintended condensation from the pipes resulted in property damage in the FCU closets, including damage to installed drywall, millwork and other materials.

14.    The total cost of repair for the damage described in paragraph 13 exceeded $1,384,456 ("the Loss").

*Builders Risk Insurance*

15.    Per an all risk "Builders Risk" Insurance Policy purchased by Capri and provided by the Underwriters for the construction of the W, the Underwriters each agreed to provide insurance to the Capri and contactors of all tiers (including HUNT) against "all risk of direct physical loss of or damage to insured property" during the course of construction.

16.    The Builders Risk policy was written on a "quota share" basis where the Underwriters agreed to share responsibility for covering the same loss or damage and to provide coverage using the same base policy form ("the Policy"), a copy of which is attached hereto as **Exhibit "A"**.

17.    The Policy's "valuation" section requires the Underwriters to indemnify HUNT for, among other things, the "[c]ost to repair or replace the property lost or damaged at the time and place of loss with material of like kind and quality less betterment including contractor's reasonable profit and overhead[.]"

18.    The Underwriters' quota share agreement ("the Agreement") divides percentage responsibility for coverage as follows:

a.    LEXINGTON provided coverage for 40 percent of the first $20,000,000 of the total Builders Risk insurance coverage for the project pursuant to

Lexington policy number 8754170.

      b.     XL provided coverage for 20 percent of $200,087,000 in limits, pursuant to XL policy number US00009032CA05A.

      c.     PRINCETON provided coverage for 10 percent of $200,087,000 in limits, pursuant to PRINCETON policy number 58-A3-EI-00000026-0.

      d.     ARCH provided coverage for 10 percent of $200,087,000 in limits, pursuant to ARCH policy number ESP0007508-00.

      e.     AXIS provided coverage for 10 percent of $200,087,000 in limits, pursuant to AXIS policy number EAF714418-01.

19.     All premiums owed for the Policies have been paid and all conditions precedent to coverage being provided thereunder have been satisfied.

20.     The Loss took place within each of the Underwriters' policies' effective dates.

21.     HUNT has notified the Underwriters of the Loss and requested payment in the amount of $1,384,656.

22.     HUNT has extensively documented the Loss and provided the Underwriters, their adjuster and consultants with on-site access to the W to observe and inspect the units and the FCUs.

23.     In spite of HUNT's compliance with the Policy, HUNT's documentation that its damages and the Loss are covered by the Policy, and HUNT's reasonable cooperation with the Underwriters, they have failed and refused to comply with HUNT's request for payment.

## COUNT I: BREACH OF CONTRACT

24.     HUNT incorporates by reference herein and re-alleges the allegations of paragraphs 1 through 23, inclusive, as though set forth herein.

25.     The Underwriters agreed to be share liability for Builders Risk claims arising

out construction of the W.

26.     The Underwriters have failed to perform their contractual obligations under the Policy to pay HUNT for the Loss. As a result, the Underwriters are in breach of contract.

27.     HUNT has been damaged by the Underwriters' breach, in that it has been wrongfully denied the benefits of the insurance coverage to which it is contractually entitled.

## COUNT II: DECLARATORY JUDGMENT

28.     HUNT incorporates by references herein and re-alleges the allegations of paragraphs 1 through 22, inclusive, as though set forth herein.

29.     An actual and justiciable controversy exists between HUNT and the Underwriters.

30.     Pursuant to 28 U.S.C. § 2201, HUNT is entitled to a declaratory judgment that, pursuant to the terms of the Policies, the Underwriters are contractually obligated to reimburse HUNT for the Loss.

## PRAYER FOR RELIEF AS TO BOTH COUNTS OF THE COMPLAINT

WHEREFORE, HUNT respectfully requests that this Court enter judgment as follows:

A.     On Count I, granting an award of the actual and consequential damages that HUNT has sustained as a result of the Underwriters' breach in an amount to be determined at trial with judgment entered against the Underwriters severally, based upon their percentage participation in the Agreement;

B.     On Count II, declaring that the Underwriters are obliged to indemnify HUNT in connection with the Loss; and

C     On Counts I and II, awarding HUNT its reasonable attorneys fees, prejudgment and post-judgment interest, and such other relief that the Court deems just and proper.

## TRIAL BY JURY DEMANDED

Plaintiff, HUNT CONSTRUCTION GROUP, INC., by and through its undersigned counsel, hereby demands trial by jury in this action.

Dated: April 14, 2010
       Fort Lauderdale, FL

Respectfully submitted,

By:   /s Eric C. Edison
      James W. Carpenter, Esq.
      Florida Bar No. 0654256
      jwc@angelolaw.com
      Eric C. Edison, Esq.
      Florida Bar No. 010379
      ece@angelolaw.com
      ANGELO & BANTA, P.A.
      Attorneys for Plaintiff
      515 East Las Olas Blvd., Suite 850
      Fort Lauderdale, Florida 33301
      Telephone:954-766-9930
      Facsimile: 954-766-9937

7

# LEXINGTON INSURANCE COMPANY

Administrative Offices: 100 Summer Street, Boston, Massachusetts 02110-2103
(hereinafter called the Company)

## COMMERCIAL PROPERTY POLICY
## DECLARATIONS

POLICY NUMBER:  8754170                          RENEWAL OF:  NEW

ITEM 1.   Named Insured:  CAPRI RESORTS, LLC

        Address:       3101 BAYSHORE DRIVE

                 FT. LAUDERDALE        FL

This insurance is issued pursuant to the Florida Surplus Lines Law. Persons insured by Surplus Lines Carriers do not have the protection of the Florida Insurance Guaranty Act to the extent of any right of recovery for the obligation of an insolvent unlicensed insurer.

ITEM 2.   Policy Period:
        From 06/13/05                    To 01/13/07
        at 12:01 A.M. Standard Time at the address of the named insured shown above.

ITEM 3.   Limit of Insurance:
        $8,000,000 PART OF $20,000,000. SUBJECT TO THE POLICY SUBLIMITS.

        Total Premium      $423,754    Minimum Earned Premium      $127,126

ITEM 4.   Perils:
        ALL RISK OF DIRECT PHYSICAL LOSS OR DAMAGE INCLUDING FLOOD AND EARTHQUAKE
        BUT EXCLUDING TERRORISM

ITEM 5.   Description of Property Covered:                              Coinsurance
        PROPERTY IN THE COURSE OF CONSTRUCTION LOCATED           N/A
        3101 BAYSHORE DRIVE
        FT. LAUDERDALE, FL

Surplus Lines Agent:    James A. Compton
Address:                302 Knights Run Avenue, #1240
                        Tampa, FL 33602
License #:              A063540

Producing Agent:    Julius Hasko
Address:            3000 Bayport Tampa, FL
License #:          A133407
This insurance issued pursuant to the
Florida Surplus Lines Law.

ITEM 6.   Mortgagee Clause: Loss, if any, shall be payable to:

Gtr. 3rd    Premium  423,756.44
Administrative Fee  35.00
Tax  2,100.00    Stamping Fee  1,059.47
Inspection Fee
Agents Signature

ITEM 7.   Forms Attached:
        See attached forms schedule

PRPDEC(Ed.01/91)
LX1119

Authorized Representative OR
Countersignature (in states where applicable)

# EXHIBIT A

## FORMS SCHEDULE

Named Insured:   CAPRI RESORTS, LLC

Policy No: 8754170                                    Effective Date:   06/13/2005

| Form Number | Edition Date | Endorsement Number | Title |
|---|---|---|---|
| PRPDEC | 01/91 | | PROPERTY DEC |
| PR9015 | 01/91 | | POLLUTION CONTAMINATION FORM |
| PR9014 | 01/91 | | OCCURRENCE LIMIT OF LIABILITY |
| PR9019 | 01/94 | | STANDARD PROPERTY CONDITIONS |
| Y69859 | 02/98 | | PROPERTY MILLENNIUM END |
| LX9512 | 08/02 | | MOLD/FUNGUS EXCLUSION |
| PR9514 | 09/02 | | PROPERTY ENDORSEMENT |
| PR9513 | 09/01 | | WAR RISK & TERRORIST EXCLUSION |
| PR9559 | 11/02 | | WATER DAMAGE EXCL INTERIOR BLD |
| PR9603 | 06/03 | | PROTECTIVE SAFEGUARDS END |
| | | LEXBDRSRSK | BUILDERS RISK MANUSCRIPT |
| | | LEXSFTCSTS | DELAY IN COMPLETION END. |
| | | 001 | INTERIOR WATER DAMAGE |

## LEXINGTON INSURANCE COMPANY

ANY REFERENCE IN THE POLICY FORM TO CONTACT IN WRITING THE COMPANY'S CLAIM OR
LEGAL DEPARTMENTS SHOULD USE THE ADDRESSES PROVIDED BELOW.

Attn: Claim Department
Lexington Insurance Company
100 Summer Street
Boston, Massachusetts 02110-2103

Attn: Legal Department
Lexington Insurance Company
100 Summer Street
Boston, Massachusetts 02110-2103

ENDORSEMENT #011

This endorsement, effective 12:01 AM  06/30/2008

Forms a part of policy no: 8754170

Insured to:  CAPRI RESORTS, LLC

By:  LEXINGTON INSURANCE COMPANY

In consideration of an ADDITIONAL PREMIUM of $43,500, it is understood and agreed that the following amendments are hereby made to this policy:

POLICY EXPIRATION DATE is amended to 07/31/2008.

SCHEDULED DATE OF COMPLETION on the Delay in Completion Endorsement is amended to 07/31/2008.

All other terms and conditions remain unchanged.

Surplus Lines Agent:    James A. Crespud
Address:                         2017 Emilia Bar. Avenue, #1213
                                       Tampa, FL 53605
License #:                     A339510
Producing Agent:  Julius Hasko
Address: 3000 Bayport    Tampa Fl
License #:  A13349
The Insurance issued pursuant to the
Florida Surplus Lines Laws.

Qtr:  3rd    Premium:  43,500.00
Administrative Fee:
Tax: 2175.00  Stamping fee:  109.00
Inspections:  2175.00
Agents Signature:

1 Insurance is issued pursuant to the Florida Surplus Lines law. Persons insured by Surplus Lines Carriers do not have the protection of the Florida Insurance Guaranty Act to the extent of any right of recovery for the obligation of an insolvent unlicensed insurer.

_____

**Authorized Representative OR**
**Countersignature (In states where applicable)**

Page 1 of 1

INSURED'S COPY

ENDORSEMENT #010

This endorsement, effective 12:01 AM  12/15/2007

Forms a part of policy no:  8754170

Insured to:  CAPRI RESORTS, LLC

By:  LEXINGTON INSURANCE COMPANY

In consideration of an ADDITIONAL PREMIUM of $107,000, it is understood and agreed that the following amendments are hereby made to this policy:

POLICY EXPIRATION DATE is amended to 06/30/2008.

SCHEDULED DATE OF COMPLETION on the Delay in Completion Endorsement is amended to 06/30/2008.

With respect to DEDUCTIBLES, the Minimum Deductible for All Perils is increased to $500,000 per occurrence.

All other terms and conditions remain unchanged.

Surplus Lines Agent:   James A. Compton
Address:   503 Kennedy Blvd. Avenue, #1240
License #:

Producing Agent  Julius Hasko
Address  3820 Bayport, Tampa FL
License #  A133909
The Insurance
Florida Surplus Lines

Qtr.  1ST  167,000.00
Administration fee
Tax  5350.00  214.60
Insp. & Survey  7,320.71
Agents Signature  [signature]

_____

[signature]

Authorized Representative OR
Countersignature (in states where applicable)

Page 1 of 1

ENDORSEMENT # 009

This endorsement, effective 12:01 AM 06/13/2005

Forms a part of policy no.: 8754170

Issued to: CAPRI RESORTS, LLC.

By: LEXINGTON INSURANCE COMPANY

THIS ENDORSEMENT MODIFIES THE POLICY. PLEASE READ IT CAREFULLY

This endorsement modifies coverage provided by the Completed Value
Builders Risk Form

A.   The following is added to the Perils Excluded of the Completed
Value Builders Risk Form:
The Company shall not be liable for any loss or damage to covered
property caused by, arising out of, contributed to, or resulting
from rain, snow, sleet or ice, all whether wind driven or not,
entering the interior of any building or structure undergoing
construction or renovation unless the exterior of such building
or structure, including but not limited to the roof and outside
walls, is COMPLETE*, and then only if said exterior of the
building first sustains physical damage by a covered loss through
which the rain, snow, sleet, or ice enters.

Extension of Coverage:
B.   Notwithstanding the above exclusion this policy subject to the
stated sublimit of liability and applicable deductible(s) is extended
to cover loss or damage to covered property caused by, arising out
of, contributed to, or resulting from rain, snow, sleet or ice, all
whether wind driven or not, entering the interior of any building or
structure undergoing construction or renovation without first
sustaining any damage to the exterior of the building or structure
and whether or not the roof and outside walls, are COMPLETE*.
The insured agrees that it will take all appropriate precautions
to avoid loss or damage to covered property from the perils
enumerated above.

The most we will pay for any one loss, casualty or disaster
arising from coverage provided by this endorsement is $1,000,000.

The deductible for this endorsement is the deductible applicable
to the cause of loss, but not less than $ 100,000, per occurrence.

All other terms, conditions, definitions, exclusions, limitations

_____
Authorized Representative OR
Countersignature (in states where applicable)

LEXDOC021
LX0404

INSURED'S COPY

ENDORSEMENT # 009                                         PAGE 0002

This endorsement, effective 12:01 AM 06/13/2005

Forms a part of policy no.:  8754170

Issued to: CAPRI RESORTS, LLC

By: LEXINGTON INSURANCE COMPANY

    and provisions of the Policy remain the same.
    * COMPLETE  means "dried in" defined as final roofing installed
    according to the project specifications; and exterior ty-vek wrap
    or similar equivalent water barrier installed; and windows
    installed all per project specifications.


All other terms and conditions remain unchanged.

Authorized Representative OR
Countersignature (in states where applicable)

LEXDOC021
LX0404

INSURED'S COPY

ENDORSEMENT # 008

This endorsement, effective 12:01 AM 06/13/2005

Forms a part of policy no.: 8754170

Issued to: CAPRI RESORTS, LLC

By: LEXINGTON INSURANCE COMPANY

It is understood and agreed that, effective at inception of the
policy, York Claims Service, Inc. shall be the designated adjusting
firm to handle any and all claims which occur during the policy
period.

York Claims Services, Inc.
1 South Wacker Drive - Suite 2940
Chicago, IL 60606

(866) 754-9675

All other terms and conditions remain unchanged.

_____
Authorized Representative OR
Countersignature (In states where applicable)

LEXDOC021
LX0404

ENDORSEMENT # 007

This endorsement, effective 12:01 AM 06/13/2005

Forms a part of policy no.:  8754170

Issued to: CAPRI RESORTS, LLC

By: LEXINGTON INSURANCE COMPANY

In consideration of the premium at which this policy is written, it
is understood and agreed that, effective at inception of the policy,
the following is added as an Additional Insured:

PB (USA) Realty Corporation

All other terms and conditions remain unchanged.

_____
Authorized Representative OR
Countersignature (in states where applicable)

LEXDOC021
LX0404

ENDORSEMENT # 006

This endorsement, effective 12:01 AM 11/15/2006

Forms a part of policy no: 8751170

Issued to: CAPRI RESORTS, LLC

By: LEXINGTON INSURANCE COMPANY

In consideration of an ADDITIONAL PREMIUM of $118,000., it is
understood and agreed that the estimated total project value are
increased to $820,594,770 as per schedule on file with the Company.

All other terms and conditions remain unchanged.

Surplus Lines Agent: James A. Compton
Address: 802 Knights Run Avenue, #1240
Tampa, Fl. 33602
A038670

License #:

Producing Agent: _Julius Haslo_

Address: _300 Bayport, Tampa FL_

License #: _A133407_

The insurance issued pursuant to the
Florida Surplus Lines Laws.

Qtr. _4th_   Premium _118,000.00_

Administrative Fee

Tax _5,900.00_  Stamping Fee _295.00_

Inspection Fee

Agents Signature: _James A. Compton_

_____
Authorized Representative OR
Countersignature (in states where applicable)

LEX00C001
LXN165          *Archive Copy*

ENDORSEMENT # 005

This endorsement, effective 12:01 AM 08/26/2005

Forms a part of policy no.: 8754170

Issued to: CAPRI RESORTS, LLC

By: LEXINGTON INSURANCE COMPANY

In consideration of the premium charged, it is understood and agreed
that the insureds mailing address is hereby amended as follows:

515 E Las Olas Blvd., Suite 1050
Ft. Lauderdale, FL 33301


All other terms and conditions remain unchanged.

_____
Authorized Representative OR
Countersignature (In states where applicable)

LEXDOC021
X0404

INSURED'S COPY

ENDORSEMENT # 004

This endorsement, effective 12:01 AM 03/22/2006

Forms a part of policy no.: 8754170

Issued to: CAPRI RESORTS, LLC

By: LEXINGTON INSURANCE COMPANY

In consideration of the premium charged, it is understood and agreed
that the following Additional Insureds are hereby made a part of this
policy:

Mezzanine Lender:
Canyon Capital Realty Advisors
9665 Wilshire Boulevard
Suite 200
Beverly Hills, CA 90212
Business: (310) 858-4234
Business Fax: (310) 247-8067

Senior Lender:
PB Capital Corporation
230 Park Avenue
New York, NY 10169
Business: (212) 756-5557
Business Fax: (212) 756-5536

All other terms and conditions remain unchanged.

_____
Authorized Representative OR
Countersignature (in states where applicable)

LEXDOC021
LX0404

INSURED'S COPY

ENDORSEMENT # 003

This endorsement, effective 12:01 AM 06/13/2005

Forms a part of policy no.:  8754170

Issued to: CAPRI RESORTS, LLC

By: LEXINGTON INSURANCE COMPANY

PERMISSION TO OCCUPY

The insured is hereby given privilege to occupy and use the
facilities as completed, pending completion of the entire project.

It is warranted that the Automatic Sprinkler systems will be
operational before occupancy of a building is permitted. Failure to
comply with this warranty voids coverage.

All other terms and conditions of this policy remain unchanged.

LEXDOC021
LX0404

_____
Authorized Representative OR
Countersignature (In states where applicable)

ENDORSEMENT # 002

This endorsement, effective 12:01 AM 06/13/2005

Forms a part of policy no.: 8754170

Issued to: CAPRI RESORTS, LLC

By: LEXINGTON INSURANCE COMPANY

In consideration of the rate and premium charged it is understood and
agreed that the expiration date of this policy is hereby changed to
12/15/2007.

All other terms and conditions remain unchanged.

_____
Authorized Representative OR
Countersignature (In states where applicable)

LEXDOC021
LX0404

ENDORSEMENT # 001

This endorsement, effective 12:01 AM 06/13/2005

Forms a part of policy no.: 8754170

Issued to: CAPRI RESORTS, LLC

By: LEXINGTON INSURANCE COMPANY

In consideration of the rate and premium charged it is understood and agreed that this policy is extended to cover loss or damage to covered property caused by, arising out of, contributed to, or resulting from rain, snow, sleet or ice, all whether wind driven or not, entering the interior of any building or structure undergoing construction or renovation without first sustaining any damage to the exterior of the building or structure and whether or not the roof and outside walls, are COMPLETE*.

The insured agrees that it will take all appropriate precautions to avoid loss or damage to covered property from the perils enumerated above.

The most we will pay for any one loss, casualty or disaster arising from coverage provided by this endorsement is $1,000,000.

The deductible for this endorsement is the deductible applicable to the cause of loss, but not less than $100,000, per occurrence.

All other terms, conditions, definitions, exclusions, limitations and provisions of the Policy remain the same.

COMPLETE means "dried in" defined as final roofing installed according to the project specifications; and exterior ty-vek wrap or similar equivalent water barrier installed; and windows installed all per project specifications.

All other terms and conditions of the policy to which this Endorsement is attached remain unchanged.

_____
Authorized Representative OR
Countersignature (in states where applicable)

LEXDOC021
LX0404

# LEXINGTON INSURANCE COMPANY
## COMPLETED VALUE BUILDERS RISK POLICY
### DECLARATIONS

Insurance is provided by the stock company shown above and hereinafter called "the Company".

1.  **A.  NAMED INSURED(S):**  Capri Resorts, LLC

    **B.  ADDITIONAL INSURED(S):**
    To the extent required by any contract or subcontract for an **INSURED PROJECT\***, and then only as their respective interests may appear, all owners, contractors and subcontractors of every tier and any other individual or entity specified in such contract or subcontract are recognized as Additional Insured(s) hereunder.

    All hereinafter referred to as the Insured
    The Named Insured shall be deemed the sole and irrevocable agent of each and every Insured under this policy for the purpose of giving or receiving any notices to/from the Company, giving instructions to or agreeing with the Company for alterations of this policy and making or receiving payments of premiums or adjustments of premium.

2.  **LOSS PAYABLE:**

    Loss, if any, shall be adjusted with and made payable to the Named Insured, or as per order of the Named Insured, whose receipt shall constitute a release in full of all liability under this policy with respect to such loss.

3.  **TERM OF INSURANCE:**

    This policy shall be effective on **06/13/2005** and shall expire on **12/15/2007** both at 12:01 A.M. standard time, at the location of the **INSURED PROJECT\***. Notwithstanding the foregoing or subsequent endorsements hereto, liability under this policy will apply only for such periods commencing directly with work at the location of the **INSURED PROJECT\*** and ending upon the earlier of the formal acceptance by the project owner(s), the placing of the **INSURED PROJECT\*** or any portion of the insured property into commercial service for its intended purpose, the expiry of the Named Insured's interest or the expiration or cancellation date as herein provided, unless otherwise agreed by endorsement. If applicable, the term of insurance includes a **TESTING PERIOD\*** not exceeding <u>No coverage</u> consecutive days.

4.  **EXTENSION OF TERM OF INSURANCE:**

    With prior notification to and agreement by the Company, this policy may be extended for up to <u>0</u> months, exclusive of the **TESTING PERIOD\***, at pro rata additional premium. Extensions beyond this period and extensions of the **TESTING PERIOD\*** are subject to payment of additional premiums at rates and terms to be developed by the Company at the time of the Company's agreement to such additional extensions.

5.   **PARTICIPATION:**

This Policy covers for 40% interest in this insurance and the Company shall not be liable for more than 40% of the Limit(s), sublimit(s) and/or aggregate limit(s) set forth in this policy.

6.   **LIMIT OF LIABILITY:**

A.   **Limit of Liability:**

The Company shall not be liable for more than $20,000,000. in any one OCCURRENCE* subject to the following sublimits of liability and annual aggregate limits of liability:

B.   **Sublimits of Liability:**

The Company shall not be liable for more than the following sublimit(s) of liability in any one OCCURRENCE* unless stated otherwise (NOTE: coverage shall only apply when a value is entered for individual sublimits below):

| | | |
|---|---|---|
| (1) | $ 20,000,000 | Physical damage to insured property at the INSURED PROJECT*; |
| (2) | $ 500,000 | Physical damage to property in Inland Transit - any one conveyance; |
| (3) | $ 500,000 | Physical damage to property in Offsite Temporary Storage - any one location; |
| (4) | $ 250,000 | Expediting Expense; |
| (5) | $ 100,000 | Physical damage to trees, plants shrubs and landscaping at the INSURED PROJECT*, Maximum of $1,000 any on item; |
| (6) | $ 100,000 | Physical damage to plans, blueprints, drawings, renderings, specifications or other contract documents and models at the INSURED PROJECT*; |
| (7) | $ 250,000 | Fire Brigade Charges & Extinguishing Expenses; |
| (8) | $ 25.0% | of the amount of insured physical loss or damage - Debris Removal; |
| (9) | $ 1,000,000 | caused by, resulting from, contributed to or aggravated by the peril of Interior Water Damage; |

In no event shall these sublimits of liability increase the limit of liability.

C.   **Annual Aggregate Limits of Liability:**

Notwithstanding the foregoing and irrespective of the above stated Limit of Liability, the maximum amount the Company will pay for loss or damage from any one OCCURRENCE*, and/or in the aggregate for loss or damage from all OCCURRENCES*, in any one policy year shall not exceed the following amounts for the following perils unless otherwise limited by the sublimits stated above:

| | | |
|---|---|---|
| (1) | $ 20,000,000 | caused by, resulting from, contributed to, or aggravated by the peril of EARTHQUAKE*; |
| (2) | $ 20,000,000 | caused by, resulting from, contributed to, or aggravated by the peril of FLOOD* |

7.  DEDUCTIBLES:

From the amount of each claim for insured loss or damage arising out of any one OCCURRENCE*, there shall be deducted the applicable amount shown below, and then the liability of the Company shall be only for the amount of such insured loss or damage in excess thereof, subject to the limit of liability, sublimits of liability or annual aggregate limits of liability set forth above.

$50,000 property damage, except:

A.  $50,000 transit per conveyance;
B.  $50,000 offsite temporary storage;
C.  $50,000 physical damage to trees, plants shrubs and landscaping;
D.  $50,000 physical damage to plans, blueprints, drawings, renderings, specifications or other contract documents and models at the INSURED PROJECT*;
E.  $50,000 to property while undergoing COLD TESTING*;
F.  $100,000 as respects the peril of FLOOD*;
G.  $100,000 as respects the peril of Interior Water Damage;
H.  $100,000 as respects the peril of EARTHQUAKE*;
I.  $5.0% of the total insured values at risk at the time and place of loss subject to a minimum deduction of $250,000 as respects the peril of NAMED STORM*;

In the event that more than one physical damage deductible shown above or specified in any endorsement issued hereunder shall apply to insured physical loss or damage in any one OCCURRENCE*, only the largest shall be applied. If the Delay in Completion Coverage extension endorsement applies to this policy, the specified deductible or waiting period deductible shall apply in addition to the physical damage deductible.

8.  DESCRIPTION OF INSURED PROJECT* (including Project Name and/or Contract Number as applicable):
Construction of two poured in place reinforced concrete 23 story buildings (hotel and condo) over three five story poured in place reinforced concrete garage pedestals.

9.  LOCATION OF INSURED PROJECT*:

3101 Bayshore Drive, Ft. Lauderdale, FL

10.  ESTIMATED COMPLETED VALUE OF INSURED PROJECT* AT POLICY INCEPTION:

Property Damage Hard Cost Values:

1.  Contract Value:                                              $ 179,392,000.

2.  Value of Items supplied by other not included in 1:         $ 0.

3.  Total Hard Costs at Project inception:                      $ 179,392,000.

Delay in Completion Values:

1. Soft Costs/ Additional Expense (Scheduled in policy endorsement):  $20,695,000.

2. Gross Earnings:  $No Coverage.

3. Loss of Rental Income:  $No Coverage.

11.  DEPOSIT PREMIUM / REPORTING / ADJUSTMENT:

Property Damage:

A.  Construction Period:
     Term Rate: $0.430 /$100 X $179,392,000 TIV =        Term  Premium:     $770,806
     ($308,336 Lexington Share);

B.  Delay In Completion Coverages (s): Installation Period:
     Term Rate: $1.394/$100 X $20,695,000 TIV =          Term  Premium:     $288,570
     ($115,428 Lexington Share);

C.  Total Term Deposit Premium (Exclusive of TRIA):     Deposit Premium:  $1,059,376
     ($423,754 Lexington Share);

D.  The foregoing shall be subject to a minimum and earned premium of:      $317,813
     ($127,126 Lexington Share);

Premium Adjustment:

(1)  The final earned premium for this policy shall be calculated by applying the rates used for the purpose of computing the deposit premium to the actual term of coverage and the Estimated Total Completed Value as reported in accordance with 11.A. above, subject to any minimum and earned premium as stated in 11.D. above.

(2)  If the premium so calculated shall differ from the deposit premium stated in 11.C. above, such difference shall be due and payable to the Named Insured or the Company, as the case may be, subject to any minimum and earned premium as stated in 11.D. above.

12.  POLICY TERRITORY:

This policy covers property within the fifty (50) states comprising the United States of America and within the District of Columbia including their coastal waters, unless otherwise endorsed to the policy.

PART A - COVERAGE

1.  INSURING AGREEMENT:

This policy, subject to the terms, exclusions, limitations and conditions contained herein or endorsed hereto, insures against all risks of direct physical loss of or damage to insured

property while at the location of the INSURED PROJECT* while in offsite temporary storage or while in inland transit, all within the policy territory and occurring during the term of this policy.

2.  **PROPERTY INSURED:**

   A.  **At the location of the INSURED PROJECT*:**

   (1)  Permanent Works - All materials, supplies, equipment, machinery, and other property of a similar nature, being property of the Insured or of others for which the Insured may be contractually responsible, the value of which has been included in the estimated value of the INSURED PROJECT* in the DECLARATIONS, all when used or to be used in or incidental to the demolition of existing structures, site preparation, fabrication or assembly, installation or erection or the construction of or alteration, renovation, rehabilitation of the INSURED PROJECT*.

   (2)  Temporary works - All scaffolding, form work, fences, shoring, hoarding, falsework and temporary buildings all incidental to the project and the value of which has been included in the estimated value of the INSURED PROJECT* in the DECLARATIONS.

3.  **EXTENSIONS OF COVERAGE:**

   A.  **TRANSIT:**

   Subject to the SUBLIMIT OF LIABILITY stated under paragraph 6.B.(2) of the DECLARATIONS, transit coverage applies with respect to property to be used in or incidental to completion of the INSURED PROJECT* from the commencement of loading at the original point of shipment anywhere within the policy territory, until completion of unloading at the INSURED PROJECT*, including shipments on inland or coastal waters but excluding ocean marine shipments.

   The Insured agrees to keep records of all shipments insured hereunder and make them available to the Company upon request.

   This coverage shall be void if the Insured enters into any special agreement with carriers, releasing them from their common law or statutory liability or agreeing that this insurance shall in any way inure to the benefit of such carriers; however, the Insured may, without prejudice to this coverage, accept such bills of lading, receipts, or contracts of transportation as are ordinarily issued by carriers containing a limitation as to the value of property insured.

   B.  **OFFSITE TEMPORARY STORAGE:**

   Subject to the SUBLIMIT OF LIABILITY stated under paragraph 6.B.(3) of the DECLARATIONS, offsite temporary storage coverage applies with respect to property to be used in or incidental to completion INSURED PROJECT*, anywhere within the policy territory but excluding such property while in the course of manufacturing or processing at the manufacturer's or supplier's site or while in transit.

   C.  **EXPEDITING EXPENSE:**

Subject to the SUBLIMIT OF LIABILITY stated under paragraph 6.B.(4) of the DECLARATIONS, in the event of direct physical loss or damage insured hereunder and occurring during the policy period, the Company will pay for the reasonable extra costs to make temporary repairs and to expedite the permanent repair or replacement of the insured property which is damaged by an insured peril, including additional wages for overtime, night work, and work on public holidays and the extra costs of express freight or other rapid means of transportation.

**D.  TREES, SHRUBS, PLANTINGS AND LANDSCAPING:**

Subject to the SUBLIMIT OF LIABILITY stated under paragraph 6.B.(5) of the DECLARATIONS, this policy is extended to cover direct physical loss or damage to trees, plantings, shrubs and landscaping materials which are part of and while located at the INSURED PROJECT*;

**E.  PLANS, BLUEPRINTS, DRAWINGS, RENDERINGS, SPECIFICATIONS OR OTHER CONTRACT DOCUMENTS & MODELS:**

Subject to the SUBLIMIT OF LIABILITY stated under paragraph 6.B.(6) of the DECLARATIONS, this policy is extended to cover direct physical loss of or damage to plans, blueprints, drawings, renderings, specifications or other contract documents (whether paper or electronic media format) and models while at the INSURED PROJECT*.

**F.  FIRE BRIGADE CHARGES AND EXTINGUISHING EXPENSES:**

Subject to the SUBLIMIT OF LIABILITY stated under paragraph 6.B.(7) of the DECLARATIONS, in the event of direct physical loss or damage insured hereunder and occurring during the policy period, the Company will pay the following reasonable expenses:

(1)  fire brigade charges and other extinguishing expenses for which the Named Insured may be assessed;

(2)  loss of fire extinguishing materials expended in fighting fire, including the loss of similar material which may be brought on the project location for the purpose of extinguishing a fire already in progress at the time such materials are ordered and delivered, but liability shall not exceed the combined value of such extinguishing materials which are on the premises, or on adjacent premises, if such materials are jointly owned at the time of loss.

**G.  DEBRIS REMOVAL:**

Subject to the SUBLIMIT OF LIABILITY stated under paragraph 6.B.(8) of the DECLARATIONS, in the event of direct physical loss or damage insured hereunder and occurring during the policy period, the Company will pay the following necessary and reasonable costs:

(1)  costs to remove debris being an insured part of the property from the project location of the insured; and/or

(2)  cost of cleanup, at the project location of the Insured, made necessary as a result of such direct physical loss or damage.

The Company will not pay the expense or cost to extract CONTAMINANTS OR POLLUTANTS* from land, water and/or debris, or to remove, restore, or replace contaminated or polluted land or water. Nor will the Company remove or transport any property or debris to a site for storage or decontamination required because the property or debris is affected by CONTAMINANTS OR POLLUTANTS*, whether or not such removal, transport or decontamination is required by law, ordinance or regulation.

It is a condition precedent to recovery under this extension that the Company shall have paid or agreed to pay for direct physical loss or damage to the property insured hereunder and that the Insured shall give written notice to the Company of intent to claim for cost of removal of debris or cost to clean up not later than 180 days after the date of such physical loss or damage.

H.  HOT TESTING*:

When a specific premium and rate are entered for HOT TESTING* in paragraph 11.C. of the DECLARATIONS and a TESTING PERIOD* has been identified in paragraph 3 of the DECLARATIONS, this policy is extended to cover direct physical loss or damage to the property insured which is caused by or results from HOT TESTING*.

The Insured warrants that supervisory and safety systems shall not be deliberately or knowingly circumvented during the conduct of TESTING*. This warranty shall not apply when it is standard accepted industry practice and/or manufacturer's specification that such circumvention is necessary for the conduct of individual activities within the conduct of TESTING* provided that such circumvention does not extend beyond said individual activities. It is further warranted that all instrumentation will be installed and activated prior to the conduct of any TESTING*.

## PART B - EXCLUSIONS AND LIMITATIONS

PERILS EXCLUDED:

1.  This policy shall not pay for loss, damage or expense caused directly or indirectly and/or contributed to, in whole or in part, by any of the following excluded perils except as specifically allowed in A, B, C, D, F or J below:

A.  Consequential loss, damage or expense of any kind or description including but not limited to loss of market or delay, liquidated damages, performance penalties, penalties for non-completion, delay in completion, or non-compliance with contract conditions, whether caused by a peril insured or otherwise, however, the foregoing shall not exclude Delay In Completion Coverage when it is endorsed to this policy;

B.  Cost of making good faulty or defective workmanship or material, unless direct physical loss or damage by an insured peril ensues and then this policy will cover for such ensuing loss or damage only;

C. Cost of making good fault, defect, error, deficiency or omission in design, plan or specification, unless direct physical loss or damage by an insured peril ensues and then this policy will cover for such ensuing loss or damage only;

D. Wear and tear, gradual deterioration, inherent vice, latent defect, corrosion, rust, dampness or dryness of the atmosphere, unless direct physical loss or damage by an insured peril ensues and then this policy will cover for such ensuing loss or damage only;

E. Notwithstanding any other war risk or terrorist exclusion that may be in the policy or any clause limiting or attempting to limit the application of any endorsements to the policy, this policy is amended as follows: the policy does not cover loss or damage to property caused by, resulting from, contributed to or aggravated by any of the following perils, whether such loss or damage is accidental or intentional, intended or unintended, direct or indirect, proximate or remote or in whole or in part caused by, contributed to or aggravated by any perils insured by the policy:

    (1) War, hostile or warlike action in time of peace or war, whether or not declared, including action in hindering, combating or defending against an actual, impending or expected attack:

        (a) by government or sovereign power (de jure or de facto) or by any authority maintaining or using military, naval or air forces; or

        (b) by military, naval or air forces; or

        (c) by an agent of any such government, power, authority or force.

    (2) Any weapon of war employing atomic fission or radioactive force whether in time of peace or war, whether or not its discharge was accidental;

    (3) Insurrection, rebellion, revolution, civil war, usurped power, or action taken by government authority in hindering, combating, or defending against such an occurrence, seizure or destruction;

    (4) Any act of one or more persons, whether known or unknown and whether or not agents of a sovereign power, for Terrorist purposes;

    (5) Hijacking or any unlawful seizure or wrongful exercise or control of any mode of transportation, including but not limited to aircraft, watercraft, truck(s), train(s) or automobile(s), including any attempted seizure of control, made by any person or persons.

    Such loss or damage is excluded regardless of any other cause, event or intervention that contributes concurrently or in any sequence to the loss or damage. Terrorist purpose means the use or threatened use of any unlawful means, including the use of force or violence against any person(s) or property (ies), for the actual or apparent purpose of intimidating, coercing, punishing or affecting society or some portion of society or government.

F. Nuclear reaction, nuclear radiation or radioactive contamination however such may have been caused; nevertheless if a fire arises directly or indirectly any of the foregoing, any loss or damage arising directly from that fire shall (subject to the provisions of this policy) be covered, excluding however all loss or damage caused by nuclear reaction, nuclear radiation or radioactive contamination arising directly or indirectly from that fire;

G. Disappearance or when revealed by inventory shortage alone;

H. Infidelity, dishonesty or fraudulent activity of the Insured or any of the Insured's partners, officers, directors, trustees, employees or others to whom the insured property is entrusted;

I. Loss, damage, costs, expenses, fines or penalties incurred or sustained by or imposed on the Insured at the order of any government agency, court or other authority arising from any cause whatsoever;

J. Actual, alleged or threatened release, discharge, escape or dispersal of CONTAMINANTS OR POLLUTANTS*, all whether direct or indirect, proximate or remote or in whole or in part caused by, contributed to or aggravated by any physical loss or damage insured by this policy;

   Nevertheless, if fire is not excluded from this policy and a fire arises directly or indirectly from actual release, discharge, escape or dispersal of CONTAMINANTS OR POLLUTANTS*, any loss or damage insured under this policy arising directly from that fire is insured, subject to the provisions of this policy;

   This exclusion shall not apply when loss or damage is directly caused by fire, lightning, aircraft impact, explosion, riot, civil commotion, smoke, vehicle impact, windstorm, hail, vandalism or malicious mischief, leakage or accidental discharge from automatic FIRE PROTECTION SYSTEMS*;

K. This policy does not cover:

   1) The removal of asbestos, dioxin or polychlorinated biphenols (hereinafter all referred to as "Materials") from any goods, products or structures. However, if asbestos is damaged by fire, lightning, aircraft impact, explosion, riot, civil commotion, smoke, vehicle impact, windstorm or hail, vandalism, malicious mischief, or leakage or accidental discharge from an AUTOMATIC FIRE PROTECTION SYSTEMS*, the cost of removal shall be covered herein. The coverage afforded by this extension does not apply to the costs of investigation or defense of any loss or damage, or any costs for loss of use expense, fine or penalty or for any expense or claim or suit related to any of the above.

   2) Demolition or increased cost of reconstruction, repair, debris removal or loss of use necessitated by the enforcement of any law or ordinance regulating such Materials.

   3) Any governmental direction or request declaring that such Materials present in, or part of, or utilized on any portion of the Insured's property or INSURED PROJECT* can no longer be used for the purpose for which it was intended or installed and must be removed or modified.

LEXBLDRSRSK.DOC

8-2004

L.  Loss or damage covered under any written or implied guarantee or warranty by any manufacturer or supplier, but only to the extent of recovery from such written or implied guarantee or warranty;

M.  Normal subsidence, settling, cracking, expansion, contraction or shrinkage of walls, floors, ceilings, buildings, foundations, patios, walkways, driveways or pavements;

N.  Cessation of the work, whether total or partial, unless such cessation has been directly occasioned by loss or damage covered under the policy. Cessation of the work, as used herein, shall not mean any period of time during which operations would not normally have been conducted such as Saturdays, Sundays or Holidays, nor shall it mean seasonal inactivity planned in advance or labor actions beyond the insured's control, provided the location of the **INSURED PROJECT\*** is maintained and protected against loss during such inactivity.

O.  Infestation, disease, freeze, drought and hail, weight of ice or snow or any damage caused by insects, vermin, rodents or animals, but only as respects EXTENSION OF COVERAGE D. - Trees, Plants, Shrubs And Landscaping.

P.  Erosion of graded or planted finish or rough grades which results from normally expected or predictable precipitation and surface water runoff.

Q.  As respects EXTENSION OF COVERAGE E. - Plans, Blueprints, Drawings, Etc., electrical or magnetic injury to or errors and omissions in creating, processing or copying electronic records, however caused;

R.  The Company shall not be liable for any loss or damage caused by, arising out of, contributed to, or
resulting from fungus, mold(s), mildew or yeast; or any spores or toxins created or produced by or emanating from such fungus, mold(s), mildew or yeast;

    (1) fungus includes, but is not limited to, any of the plants or organisms belonging to the major group fungi, lacking chlorophyll, and including mold(s), rusts, mildews, smuts and mushrooms;

    (2) mold(s) includes, but is not limited to, any superficial growth produced on damp or decaying organic matter or on living organisms, and fungi that produce mold(s);

    (3) spores means any dormant or reproductive body produced by or arising or emanating out of any fungus, mold(s), mildew, plants, organisms or microorganisms, regardless of any other cause or event that contributes concurrently or in any sequence to such loss.

S.  EXCLUSION FOR SOFTWARE AND DATA-RELATED LOSSES

The Company will not pay for Damage or Consequential loss directly or indirectly caused by, consisting of, or arising from:

    (1) Any functioning or malfunctioning of the internet or similar facility, or of any intranet or private network or similar facility,

(2) Any corruption, destruction, distortion, erasure or other loss or damage to data, software, or any kind of programming or instruction set,

(3) Loss of use or functionality whether partial or entire of data, coding, program, software, any computer or computer system or other device dependent upon any microchip or embedded logic, and any ensuing liability or failure of the Insured to conduct business.

These clauses shall not exclude subsequent damage or Consequential loss, not otherwise excluded, which itself results from a Defined Peril. Defined Peril shall mean: Fire, Lightning, Earthquake, Explosion, Falling Aircraft, Flood, Smoke, Vehicle Impact, Windstorm or Tempest.

Such Damage or Consequential loss described in 1, 2, or 3 above is excluded regardless of any other cause that contributed concurrently or in any other sequence.

## T. PROPERTY Y2K MILLENNIUM EXCLUSION

(1) The Company will not pay for Damage or Consequential Loss directly or indirectly caused by, consisting of, or arising from, the failure of any computer, data processing equipment or media microchip, operating systems, microprocessors (computer chip), integrated circuit or similar device, or any computer software, whether the property of the Insured or not and whether occurring before, during or after the year 2000 that results from the inability to:

(a) correctly recognize any date as its true calendar date;

(b) capture, save, or retain and/or correctly manipulate, interpret or process any data or information or command or instruction as a result of treating any date otherwise than as its true calendar date; date/or

(c) capture, save, retain or correctly process any data as a result of the operation of any command which has been programmed into any computer software, being a command which causes the loss of data or the inability to capture, save, retain pr correctly process such data on or any date.

(2) The Company will not pay for the repair or modification of any part of an electronic data processing system or its related equipment, to correct deficiencies or features of logic or operation.

(3) The Company will not pay for Damage or Consequential Loss arising from the failure, inadequacy, or malfunction of any advice, consultation, design evaluation, inspection installation, maintenance, repair or supervision done by the Insured or for the Insured or by or for others to determine, rectify or test, any potential or actual failure, malfunction or inadequacy described in 1. above.

Such Damage or Consequential Loss described in 1,2, or 3 above is excluded regardless of any other cause that contributed concurrently or in any other sequence.

These clauses shall not exclude subsequent Damage or Consequential Loss, not otherwise excluded, which itself results from a Defined Peril. Defined Peril shall mean: fire, lightning, explosion aircraft or vehicle impact, falling objects, windstorm, hail, tornado, hurricane, riot, strike, civil commotion, vandalism, malicious mischief, earthquake, volcano, tsunami, freeze or weight of snow.

### U. NUCLEAR, CHEMICAL AND BIOLOGICAL TERRORISM ABSOLUTE EXCLUSION

Regardless of the amount of damage and losses, and whether TRIA or non certified Terrorism coverage is  provided in the policy the following exclusions are <u>absolute</u> as to any incident of terrorism:

1. That involves the use, release or escape of nuclear materials, or that directly or indirectly results in nuclear reaction or radiation or radioactive contamination; or

2. That is carried out by means of the dispersal or application of pathogenic or poisonous biological or chemical materials; or

3. In which pathogenic or poisonous biological or chemical materials are released, and it appears that one purpose of the terrorism was to release such materials.

### 2.   PROPERTY EXCLUDED:

This policy does not insure:

A. Land and land values and the value of cut, fill and backfill materials existing at the project site prior to project commencement; however, to the extent included in the contract bid documents and declared for premium purposes, the value of fill and backfill materials purchased for use in the completion of the project is not excluded. Notwithstanding the foregoing, labor and material charges incurred to move, remove, place or otherwise handle cut, fill and backfill materials, whether insured or uninsured in the foregoing, are covered to the extent such charges are included in the contract bid documents and declared for premium purposes;

B. Contractor's tools, machinery, plant and equipment, including spare parts and accessories, whether owned, loaned, hired or leased, and property of a similar nature not destined to become a permanent part of the completed INSURED PROJECT* unless the value of the same is reported and additional premium is paid at rates and terms to be agreed;

C. Vehicles or equipment licensed for highway use, rolling stock, aircraft or watercraft;

D. Water, animals, standing timber and growing crops;

E. Accounts, bills, currency, stamps, deeds, evidence of debt, checks, money, securities, precious metals or precious stones or other property of a similar nature;

F. Existing property at the location of the INSURED PROJECT* unless separately declared to the Company in advance and specifically endorsed to the policy;

G. Property located at other than the location of INSURED PROJECT* except as covered under the Transit or Offsite Temporary Storage Extensions of Coverage;

H. Prototype, developmental or used machinery and equipment but only as to damage while undergoing any form of testing, commissioning or startup unless specifically endorsed to the policy;

I. Transmission and distribution lines outside of the INSURED PROJECT*;

J. Loss or damage to insured property while covered by Ocean Marine Insurance or while waterborne in the course of ocean shipment;

## PART C - DEFINITIONS

Wherever in this Policy a word or words appear in capitalized bold face type followed by an asterisk, the following definitions will be applied in the interpretation of such wording:

1. CONTAMINANTS OR POLLUTANTS:

   CONTAMINANTS or POLLUTANTS means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste, which after its release can cause or threaten damage to human health or human welfare or causes or threatens damage, deterioration, loss of value, marketability or loss of use to property insured hereunder, including, but not limited to, bacteria, fungi, virus, or hazardous substances as listed in the Federal Water, Pollution Control Act , Clean Air Act, Resource Conservation and Recovery Act of 1976, and Toxic Substances Control Act or as designated by the U. S. Environmental Protection Agency. Waste includes materials to be recycled, reconditioned or reclaimed.

2. EARTHQUAKE:

   All land movement due to seismic activity, including but not limited to shocks, tremors, volcanic action, volcanic eruption, earth rising or shifting, landslide, subsidence, sinkhole, rockfall and tsunami.

4. FIRE PROTECTION SYSTEMS:

   Tanks, water mains, hydrants, or valves, and any other equipment whether used solely for fire protection or jointly for fire protection and for other purposes but excluding:

   A. Branch piping from a joint system where such branches are used entirely for purposes other than fire protection;

   B. Any underground water mains or appurtenances located outside of the described premises and forming part of the public water distributing system;

   C. Any pond or reservoir in which the water is impounded by a dam;

5. FLOOD:

   A. A general and temporary condition of complete inundation of normally dry land areas, including dewatered areas, from:

      (1) The overflow of inland or tidal waters;

(2) The unusual and rapid accumulation or runoff of surface water *;

(3) Mudslides (i.e. mudflows) which are caused by flooding as defined in subparagraph A(2) above and are akin to a river of liquid and flowing mud on the surfaces of normally dry land areas, as when earth is carried by a current of water and deposited along the path of the current;

* The term "surface water", as used hereunder, shall mean seepage, leakage or influx of water (immediately derived from natural sources) through sidewalks, driveways, foundations, walls, basements or other floors, or through doors, windows or any other openings in such sidewalks, foundations, walls or floors; and shall also include all water which backs up through sewers and drains. All whether driven by wind or not.

B. The collapse or subsidence of land along the shore of a lake or other body of water as a result of erosion or undermining caused by waves or currents of water exceeding the cyclical levels which result in flooding as defined in A(1) above.

6. **INSURED PROJECT:**

The work which the insured is contractually obligated to perform in accordance with the contract documents being more fully described and located as set forth in the Declarations.

7. **NAMED STORM:**

An atmospheric disturbance marked by high winds, with or without precipitation that has been declared by the National Weather Service to have wind speeds in excess of 39 miles an hour and includes such events such as Hurricane, Typhoon, Tropical Cyclone, Tropical Storm, Rainstorm, Hailstorm, Tornado, or any combination of the foregoing events, including any resulting flood, tidal or wave action.

8. **OCCURRENCE:**

With the exception of the perils of EARTHQUAKE*, FLOOD*, NAMED STORM*, WINDSTORM*, riot, riot attending a strike, civil commotion, and vandalism and malicious mischief OCCURRENCE* means an accident, incident, or a series of accidents or incidents arising immediately out of a single event or originating cause and includes all resultant or concomitant losses wherever located.

In respect of the perils of EARTHQUAKE*, FLOOD*, NAMED STORM*, WINDSTORM*, riot, riot attending a strike, civil commotion, and vandalism and malicious mischief, OCCURRENCE* shall mean all losses arising during a continuous period of seventy-two (72) hours during the term of this policy insofar as the limit of liability, sublimit of liability, aggregate limit of liability and the deductible provisions of the policy are concerned. The insured may elect the moment when the seventy-two (72) hour period begins, but no two such periods shall overlap. Such EARTHQUAKE*, FLOOD*, NAMED STORM*, WINDSTORM*, riot, riot attending a strike, civil commotion, and vandalism and malicious mischief shall be deemed to be a single OCCURRENCE* within the meaning of this policy. The Company shall not be liable for any such loss occurring before the effective date and time or occurring after the expiration date and time of this Policy; however, the Company will

LEXBLDRSRSK.DOC                                                                    U-2004

be liable for any loss occurring for a period, of up to seventy-two (72) consecutive hours after the expiration of this policy provided that the occurrence takes place prior to the date and time of the expiration of this policy.

9. TESTING:

    A. HOT TESTING* - Any startup, commissioning or other forms of testing making use of any feedstock or similar media including operational or performance tests.

    B. COLD TESTING* - Any functional testing, exclusive of HOT TESTING* as defined above, including but not limited to electrical, mechanical, hydraulic, hydrostatic and pneumatic.

    C. For the purposes of the foregoing definitions, startup and testing of building systems shall be considered COLD TESTING*.

10. TESTING PERIOD:

As respects HOT TESTING*, the TESTING PERIOD* shall mean and be limited to that period beginning with the introduction into the insured property of feedstock or similar media for processing and handling or the commencement of supply to a system and continuously thereafter whether or not such testing, commissioning or startup is continuous or intermittent and terminating on the expiry of the period of time as provided in Paragraph 5 of the Declarations.

11. WATER DAMAGE:

Means physical loss or damage as covered by this Policy which is a result of leakage of fluids, liquids, gases and/or similar media caused by other than the peril of FLOOD *.

12. WINDSTORM:

An atmospheric disturbance marked by high winds, with or without precipitation, including such events as hurricane, typhoon, rainstorm, hailstorm, tornado, or any combination of the foregoing events, including any resulting flood, tidal or wave action.

## PART D - GENERAL CONDITIONS

1. OBSERVANCE OF CONDITIONS:

The due observance and fulfillment of the terms and conditions of this policy by the Insured, insofar as they relate to anything to be done or complied with by them, shall be a condition precedent to any liability of the Company to make payment for loss under this policy.

2. INCREASED HAZARD:

If the circumstances in which this insurance was entered into shall be altered or if the risk shall be materially increased, the Insured shall as soon as possible give notice in writing to the Company.

LEXBLDRSRSK.DOC

8-2004

3.  MISREPRESENTATION & FRAUD:

This policy shall be void if the Insured has concealed or misrepresented any material fact or circumstances concerning this insurance or the subject thereof, or in case of any fraud, attempted fraud or false swearing by the Insured touching any matter relating to this insurance or the subject thereof, whether before or after a loss.

4.  ERRORS & OMISSIONS:

No unintentional errors or omissions in any information required to be reported to the Company or otherwise relative to this insurance will prejudice the Insured's right of recovery, but will be reported to the Company as soon as practicable when discovered.

5.  INSPECTION & AUDIT:

While this policy is in effect, the Company can, at any reasonable time, inspect the insured property and operations. However, neither the Company's inspection nor any report thereof can serve as any representation that the insured property or operations are safe or healthful, or that they comply with any law, rule or regulation.

Books and records will be kept by the Insured in such a manner that the total project cost of the work and the exact amount of any loss or damage covered by this policy can be accurately determined. The Company may examine and audit the Insured's books and records at any reasonable time during the policy period and within one year after the final termination of the policy, as long as they relate to the subject matter of this policy.

6.  CLAIM AGAINST TRANSIT CARRIER AND/OR BAILEE:

No claim for loss or damage during transit shall be payable hereunder until the Insured has filed a claim with and made reasonable efforts to secure payment from the transporting carrier and the carrier has denied liability.

7.  PROTECTION OF PROPERTY:

The Insured will take reasonable steps to protect, recover or save the property insured and minimize any further or potential loss or damage when:

A.  The property insured has sustained direct physical loss or damage by an insured peril; or

B.  The property insured is in imminent danger of sustaining direct physical loss or damage from:

    (1)  NAMED STORM* or other related perils, but only when the potential for the same to occur has been forecasted by the National Weather Service or similar recognized weather forecast service(s);

    (2)  FLOOD*, but only when the potential for the same to occur has been forecasted by the National Weather Service or the U.S. Army Corps of Engineers.

    (3)  Fire;

LEXBLDRSRSK.DOC                  16 of 22                          8-2004

The acts of the Insured or the Company in protecting, recovering or saving the property insured will not be considered a waiver or an acceptance of abandonment. The Insured and the Company will bear the expense incurred proportionate to their respective interests.

The foregoing shall not serve to increase the Limit of Liability stated in the DECLARATIONS and shall be subject to the deductible provisions of the policy.

8. **EXAMINATION UNDER OATH:**

The Insured shall submit and, so far as is within their power, shall cause all other persons to submit, to examination under oath by any persons named by the Company relative to any and all matters in connection with a claim and shall produce for examination all books of account, bills, invoices, and other vouchers or certified copies thereof if originals are lost, at such reasonable time and place as may be designated by the Company or its representatives and shall permit extracts and copies thereof to be made.

9. **IN CASE OF LOSS:**

A. **Notice of Loss:**

The Insured will, as soon as practicable, report in writing to the Company every loss OCCURRENCE* which may give rise to a claim under this policy.

B. **Proof of Loss:**

The Insured will, as soon as practicable, file with the Company a signed and sworn detailed proof of loss stating to the best knowledge and belief of the Insured the time and cause of loss or damage and the interest of the Insured and others in the property so affected.

C. **Payment of Loss:**

All adjusted claims, including partial payments thereon, will be due and payable no later than (60) sixty days after presentation and acceptance of proof of loss or partial proof of loss, as the case may be, by this Company or its appointed representative.

10. **PARTIAL LOSS:**

The Company hereby grants permission to repair any partial damage to the property insured which can be conveniently and advantageously undertaken by the Insured. The Company will reimburse the Insured who has suffered the loss for the actual cost of such repairs, subject always to the applicable deductible and limits of liability stated in the Declarations. Nothing in this clause shall be deemed to have waived the requirement that notice of loss be given forthwith to the Company as provided in the policy.

11. **SUBROGATION:**

If the Company pays a claim under this policy, it will be subrogated, to the extent of such payment, to all the Insured's rights of recovery from other persons, organizations and entities.

The Insured will execute and deliver instruments and papers and do whatever else is necessary to secure such rights.

The Company will have no rights of subrogation against:

A.   Any person or entity, which is a Named Insured or an Additional Insured;

B.   Any other person or entity, which the Insured has waived its rights of subrogation against in writing before the time of loss;

Notwithstanding the foregoing, it is a condition of this policy that the Company shall be subrogated to all the Insured's rights of recovery against:

A.   Any Architect or Engineer, whether named as an Insured or not, for any loss or damage arising out of the performance of professional services in their capacity as such and caused by an error, omission, deficiency or act of the Architect or Engineer, by any person employed by them or by any others for whose acts they are legally liable, and

B.   Any manufacturer or supplier of machinery, equipment or other property, whether named as an Insured or not, for the cost of making good any loss or damage which said party has agreed to make good under a guarantee or warranty, whether expressed or implied.

The Insured will act in concert with the Company and all other interest concerned in the exercise of such rights of recovery. The Insured will do nothing after a loss to prejudice such rights of subrogation.

If any amount is recovered as a result of such proceedings, the net amount recovered after deducting the costs of recovery, will accrue first to the Company. Any excess of this amount will be remitted to the Insured. If there is no recovery, the interests instituting the proceedings will bear the expense of the proceedings proportionately.

12. **CONTRIBUTING INSURANCE:**

Permission is granted for other policies written upon the same terms, exclusions, limitations and conditions as those contained herein. This policy will contribute to the total of each loss otherwise payable herein to the extent of the participation of this policy in the total limit of liability as provided by all policies written upon the same terms, exclusions, limitations and conditions as those contained in this policy.

13. **EXCESS INSURANCE:**

Permission is granted the Insured to have excess insurance over the limit of liability set forth in this policy without prejudice to this policy, nor will the existence of such insurance, if any, reduce any liability under this policy.

14. **OTHER INSURANCE:**

Except as stated in CONTRIBUTING INSURANCE and EXCESS INSURANCE above, if there is other collectible insurance, this policy will cover as excess insurance and will not contribute with such other insurance.

15. UNDERLYING INSURANCE:

Permission is given for the Insured to purchase insurance on all or any part of the deductible(s) or perils of this policy. The existence of such underlying insurance shall not prejudice or affect any recovery otherwise payable under this policy.

16. RECOVERY OR SALVAGE:

Any recovery or salvage excluding proceeds from subrogation and other insurance recovered or received after a loss settlement under this policy or any recovery from suretyship, insurance, reinsurance, security or indemnity taken by or for the benefit of the Company will apply as if recovered or received prior to the loss settlement and the loss will be readjusted accordingly.

17. REINSTATEMENT:

With the exception of loss caused by perils which are subject to annual aggregate limits, any loss hereunder will not reduce the amount of this policy.

18. BANKRUPTCY OR INSOLVENCY:

Bankruptcy or Insolvency of the Insured shall not relieve the Company of any of its obligations under this policy.

19. BRANDS & TRADEMARKS:

In case of loss or damage by an insured peril to insured property bearing a brand, trademark or label, the Company may take all or any part of the property at any agreed or appraised value. If so, the Insured may, at their own expense:

A. Stamp salvage on the property or its container, if the stamp will not physically damage the property; or

B. Remove the brand, trademark or label, if doing so will not physically damage the property. The Insured must re-label the property or its container to comply with the law.

20. ENTRY, CONTROL, ABANDONMENT:

After loss or damage to insured property, the Company shall have an immediate right of access and entry by accredited agents sufficient to enable them to survey and examine the property, and to make an estimate of the loss or damage and, after the Insured has secured the property, a further right of access and entry sufficient to enable them to make an appraisal or estimate of the loss or damage, but the Company shall not be entitled to the control or possession of the property, and without the consent of the Company there can be no abandonment of the property insured.

21. PAIR & SET:

A. In the event of loss of or damage to any insured article or articles which are part of a pair or set, the measure of loss of or damage to such article or articles will be a reasonable

LEXBLDRSRSK.DOC

8-2004

and fair proportion of the total value of the pair or set, giving consideration to the importance of said article or articles, but in no event will such loss or damage be construed to mean total loss of the pair or set; or

B.   In the event of loss or damage to any part of property insured consisting, when complete for use, of several parts, the Company will only be liable for the value of the part lost or damaged.

## 22. APPRAISAL:

If the Insured and the Company fail to agree as to the value of the property or the amount of loss, either may make written demand for an appraisal. In this event, each party will choose a competent and impartial appraiser within twenty (20) days after receiving a written request from the other. The appraisers will then select an umpire. If they can not agree upon an umpire within fifteen (15) days, either may request the selection by a judge of a court having jurisdiction. The appraisers will then appraise the loss, stating separately the value of the property and the amount of loss to each item, and failing to agree, will submit their differences to the umpire. A decision in writing, so itemized, of any two will be binding. Each party will pay its chosen appraiser and bear the other expense of the appraisal and umpire equally. The Company shall not be held to have waived any of its rights by any act relating to appraisal.

## 23. ASSIGNMENT:

Except in the event of an authorized assignment under the Bankruptcy Act or a change of title by succession, operation of law or death, the Named Insured agrees not to transfer any legal rights or interests in the policy without the Company's written consent.

## 24. BENEFIT TO BAILEE:

This policy will not inure, directly or indirectly, to the benefit of any carrier or bailee.

## 25. SERVICE OF SUIT CLAUSE:

Service of Suit: In the event of failure of the Company to pay any amount claimed to be due hereunder, the Company, at the request of the Insured, will submit to the jurisdiction of a court of competent jurisdiction within the United States. Nothing in this condition constitutes, or should be understood to constitute a waiver of the Company's rights to commence an action in any court of competent jurisdiction in the United States to remove an action to a United States District Court or to seek a transfer of a case to another court as permitted by the laws of the United States or of any state in the United States. It is further agreed that service or process in such suit may be made upon Counsel, Legal Department, Lexington Insurance Company, 100 Summer Street, Boston, Massachusetts, 02109, or his or her representative, and that, in any suit instituted against the Company upon this policy, the Company will abide by the final decision of such court or of any appellate court in the event of an appeal.

Further, pursuant to any statute of any state, territory, or district of the United States, which makes provision therefor, the Company hereby designates the Superintendent,

Commissioner or Director of Insurance, other officer specified for that purpose in the statute, or his successor or successors in office as its true and lawful attorney upon whom may be served any lawful process in any action, suit, or proceeding instituted by or on behalf of the Insured or any beneficiary hereunder arising out of this policy of insurance and hereby designates the above named Counsel as the person to whom the said officer is authorized to mail such process or a true copy thereof.

No suit, action or proceeding against the Company or this policy for the recovery of any claim will be sustainable in any court of law or equity unless the Insured will have fully complied with all the requirements of this policy. The Company agrees that any action or proceeding against it for recovery of any loss under this policy will not be barred if commenced within (12) twelve months after the OCCURRENCE* become known to the Insured unless a longer period of time is provided by applicable statute.

26. <u>VALUATION:</u>

At the time and place of loss, the basis of adjustment of a claim, unless otherwise endorsed herein, shall be as follows:

A.  Property Under Construction - Cost to repair or replace the property lost or damaged at the time and place of loss with material of like kind and quality less betterment including contractor's reasonable profit and overhead in the same proportion as that included in the original contract documents, but in no event to exceed the Limit of Liability; if not so replaced then loss shall be settled on the basis of Actual Cash Value with proper deduction for depreciation.

B.  Property Of Others (Including Items Supplied By the Owner) - At owner's cost or other actual cash value, whichever is greater, including the contractor's charges.

C.  Temporary Works - Cost to repair or replace the property lost or damaged with material of like kind, quality and condition but in the event not replaced recovery will not exceed Actual Cash Value.

D.  Plans, Blueprints, Drawings, Renderings, Specifications or Other Contract Documents and Models - At the cost to reproduce the property with other property of like kind and quality including the cost of gathering or assembling information from back up data if replaced, or if not replaced, at the value of blank material;

E.  Trees, Shrubs, Plantings and Landscaping - At cost to replace with property of like kind, quality and size plus the proper proportion of labor expended if such damage occurs after installation.

27. <u>CANCELLATION:</u>

A.  This policy may be canceled by the Named Insured by mailing to the Company written notice stating when thereafter such cancellation shall be effective. This policy may be canceled by the Company by mailing to the Named Insured, at the address shown in this policy or last known address, written notice stating when, not less than sixty (60) days thereafter such cancellation shall be effective, except in the event of the Named Insured's

non-payment of any premium due, said notice shall be ten (10) days. The mailing of notice as aforementioned shall be sufficient proof of notice and the effective date of cancellation stated in the notice shall become the end of the policy period. Delivery of such written notice either by the Named Insured or by the Company shall be equivalent to mailing.

B.  In the event of cancellation, premium adjustment may be made at the time cancellation is effected and, if not then made, shall be made as soon as practicable after cancellation becomes effective. The Company's check or the check of its representative mailed or delivered as aforesaid shall be a sufficient tender of any refund of premium due to the Insured.

C.  If the Named Insured cancels, earned premium will be computed in accordance with Paragraph 11 of the Declarations plus ten percent (10%) short rate penalty. If the Company cancels, earned premium will be computed in accordance with Paragraph 11 of the Declarations. Any premium so computed shall always be subject to any minimum premium set forth in Paragraph 11 of the Declarations.

28. STATUTES:

If any Article(s) herein stated conflict with the laws or statutes of any jurisdiction within which this policy applies, such Article(s) are hereby amended to conform to said laws or statutes.

29. TITLES OF PARAGRAPHS:

The several titles of the various paragraphs of this form and endorsements attached to this policy are inserted for reference and shall not be deemed in any way to affect the provisions to which they relate.

30. CONFLICT OF WORDING:

The conditions contained in this manuscript form shall supersede those of the printed conditions to which this form is attached, wherever the same may conflict. Where there is a conflict between the manuscript form and the printed conditions of this policy, the conditions of the specific section shall prevail.

Attached to and forming part of Policy No: 8754170 of the Lexington Insurance Company